**Keith S. TURNER et al., Appellants,**

v.

**HOUSTON AGRICULTURAL CREDIT CORPORATION, Appellee.**

**No. 17571.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 10, 1980.

Brunson & Erwin, John S. Brunson, Houston, for appellants.

Barnet B. Skelton & Associates, Barnet B. Skelton, Barnet B. Skelton, Jr., Houston, for appellee.

EVANS, Justice.

Houston Agricultural Credit Corporation brought this action against the defendants, Keith S. Turner and his parents, Mr. and Mrs. Floyd A. Turner, to recover a personal judgment and to foreclose a mortgage lien under a loan in the original principal amount of $84,250.00, obtained by the Turners to finance a cattle venture. The Turners defended on the basis that Houston Agricultural had fraudulently misrepresented to them that it would loan additional sums to them up to a limit of $125,000.00; that they had been induced to enter into the loan transaction upon such representations; and that by reason of Houston Agricultural's failure to honor its commitment, their cattle operation had failed and they were, therefore, unable to perform their loan obligations. The Turners contended that all unsold cattle and equipment comprising the security for the loan had been sequestered and sold by Houston Agricultural and that they were entitled to have the transaction rescinded.

In response to special issues, the jury found that Houston Agricultural had promised the Turners that it would make additional advances up to a limit of $125,000.00; that the Turners had relied upon such promise in entering into the loan transac-

tion; that the promise was material and had been made for the purpose of inducing the Turners to enter into the transaction; and that Houston Agricultural had no intention of fulfilling the promise when made. On the basis of the jury's verdict the Turners filed a motion for judgment which the trial court denied, and Houston Agricultural filed a motion for judgment *non obstante veredicto* which the court granted. This appeal is by Keith Turner and by the Independent Executor under the wills of Mr. & Mrs. Floyd Turner, both of whom died during the pendency of the suit.

In early August 1975, Mr. and Mrs. Turner and their son Keith had arranged with a cattle owner, Layton Hazelip, for the purchase of 417 head of cattle and equipment for an agreed price of $80,000.00. The Turners approached Houston Agricultural and asked for a loan to finance the purchase price of such cattle and equipment, submitting to Houston Agricultural financial statements showing a net worth for Keith Turner in the amount of $7,700.00 and for Mr. and Mrs. Floyd Turner in the amount of $271,480.00. At that time, Houston Agricultural held a mortgage lien on the cattle and equipment securing a loan to Hazelip, and upon inspecting the collateral, it placed a value of $74,945.00 on the cattle and $8,855.00 on the equipment. A loan of $84,150.00 was then made to the Turners, who executed a promissory note, security agreement and financing statements and, as additional security, a deed of trust covering certain real estate in Houston. Hazelip's account was credited on the books of Houston Agricultural for the $80,000.00 purchase price, and the balance of the loan, $4,250.00, was used to purchase the corporate stock of Houston Agricultural pledged as additional security for the loan.

Several weeks later, Houston Agricultural made an additional advancement of $4,829.71 to the Turners for use as an operating fund, and to evidence that debt, the Turners executed a second promissory note. The following day, Keith Turner sold 6 head of cattle and in accordance with the terms of the original note, he sent the $729.60 proceeds to Houston Agricultural to be applied against the indebtedness. Later, in October 1975, he sold 31 head of cattle for $2,955.00 and contacted Houston Agricultural's loan officer to determine how the proceeds were to be used. This officer, who was new to the loan transaction, advised Turner that Houston Agricultural could not loan any more money on the cattle. Deciding it would be best to liquidate the cattle operation, Keith Turner called another loan officer, who indicated that Houston Agricultural could advance additional funds to get the cattle ready for sale. In November 1975 Keith Turner received a check for $2,480.00 and a third promissory note in the principal amount of $4,434.46, representing the sum of the $2,480.00 check, the balance then due under the $4,829.71 note, and a service and commitment fee of $177.37. Keith Turner changed the face amount of the note to $2,480, signed the note, and sent it back to Houston Agricultural. In early December he sold 110 head of cattle for $9,772.40 and by letter advised Houston Agricultural of the number of cattle sold and how many remained. In his letter Keith Turner stated that the $4,434.46 note was inconsistent with his understanding of the financial arrangement, that the proceeds of the December sale were needed to pay current obligations, and that such funds would not be used except to pay "direct cost, labor and operating expenses." Houston Agricultural responded with a letter stating that the loan documents prohibited the proceeds of sale from being used for any purpose other than payment of the loan debt; that the Turners should sign a note for the amount of $4,434.46, and that their failure to do so and to remit the proceeds from the sale of the 110 head of cattle would result in the matter being turned over to their attorney for collection.

In January 1976 Houston Agricultural filed this action and in March 1976, all remaining cattle and equipment were sequestered and sold pursuant to court order, netting the sum of $33,584.25. Houston Agricultural then proceeded with its action for recovery of the deficiency between the amount of the sale proceeds and the unpaid

balance due on the $84,250.00 note, the $4,829.71 note, and the alleged advance of $4,434.46, plus interest and attorneys fees, and for foreclosure of the security interest lien on the proceeds of the sequestration sale and of the deed of trust lien on the Houston real estate.

The Turners first contend that the trial court erred in entering the judgment *non obstante veredicto* because the jury found in their favor with respect to all elements necessary to establish their defense of fraud.

■ The general rule regarding the elements of actionable fraud is: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the other party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183 (Tex.1977). There is no question but that the jury found in favor of the Turners with respect to the first five of these elements. However, there was no showing of monetary loss to the Turners and no issue was submitted with respect to the element of injury.

■ In an action to rescind a contract based upon the ground of fraud, some pecuniary injury or damage must be shown. *Russell v. Industrial Transportation Company*, 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462, 51 A.L.R. 1. However, the extent of the injury or damage need not be proved, if the damage is shown to be substantial. *Texas Industrial Trust, Inc., v. Lusk*, 312 S.W.2d 324, 327 (Tex.Civ.App.—San Antonio 1958, no writ). The word "damage" is not restricted to a monetary loss, and it is sufficient that the defrauded party has been induced to incur legal liabilities or obligations which would not have been incurred except for the fraud. *Russell v. Industrial Transportation Company*, supra. In the case at bar, the cloud cast upon the Turners' title by the deed of trust is a

sufficient showing of actual damage. *Wise & Smoot, Inc., v. King*, 161 S.W.2d 295, 297 (Tex.Civ.App.—Amarillo 1942, no writ). Thus, there is undisputed evidence of damage within the context of the Turners' allegations of fraud.

The next question to be determined is whether parol evidence was admissible to establish the agreement of Houston Agricultural to make additional advances up to a limit of $125,000.00, or whether such agreement was void and unenforceable, as Houston Agricultural contends, by reason of the Statute of Frauds, (§ 26.01 Tex.Bus. & Com.Code Ann.) and the Texas Trust Act, (Article 7425b–7 Tex.Rev.Civ.Stat.Ann.). Houston Agricultural argues that the oral agreement to make future advances constitutes a "radical variance" from the terms of the loan documents, particularly a provision in the deed of trust to the effect that Houston Agricultural "may" make future loans and advances to the Turners.

■ The terms of the loan documents do not set any maximum or minimum limit on the amount which Houston Agricultural is committed to loan with respect to the Turners' cattle operation. The loan documents specifically cover only the parties' agreement with respect to the initial indebtedness and provide, in general terms, that the collateral will stand as security for any future advances. Thus, Houston Agricultural's oral commitment to advance funds to the Turners for their cattle enterprise up to a limit of $125,000.00, which the Turners contend was the inducement for their making the loan, does not contradict, vary, or abrogate the terms of the loan documents. *Zoeller v. Howard Gardiner, Inc.* 585 S.W.2d 920 (Tex.Civ.App.—Amarillo 1979, no writ.) Since this oral agreement formed part of the consideration for the written contracts, and was the inducement for their execution of the written agreements, it was subject to proof by parol evidence although not specifically referred to in the written documents. *Leyendecker v. Strange*, 204 S.W.2d 845, 847 (Tex.Civ.App.—Galveston 1947, writ ref. n. r. e.).

■ The jury's verdict that Houston Agricultural had committed actionable fraud in knowingly making a false promise to the Turners in order to induce them to enter into the loan transaction constitutes a legal basis for the Turners' avoidance of the transaction. *Wise & Smoot v. King*, supra. There were no issues submitted on the question of whether the Turners waived the fraud or ratified the transaction by accepting advances of funds after learning that Houston Agricultural did not intend to fulfill its promise, and the evidence does not conclusively establish waiver or ratification as a matter of law.

Since the record reflects that the jury's verdict is supported by legally sufficient evidence, the trial court's judgment *non obstante veredicto* must be reversed. *Colonial Savings Association v. Taylor*, 544 S.W.2d 116 (Tex.1976); *Neyland v. Brown*, 141 Tex. 253, 170 S.W.2d 207, 172 S.W.2d 89 (1943); *Rodriguez v. Higginbotham-Bailey-Logan Co.*, 138 Tex. 476, 160 S.W.2d 234 (1942); Rule 301 Tex.R.Civ.P. The question remaining for this court's consideration is whether judgment should be rendered or whether this cause must be remanded to the trial court for further action.

■ As a general rule, one who seeks in equity to have a contract rescinded must offer to make restoration to the other party of that which was received by him under the contract. *Texas Company v. State*, 154 Tex. 494, 281 S.W.2d 83 (1955). A recognized exception to this rule is that rescission may be allowed without complete or partial restoration of the consideration where the particular circumstances indicate that to be the more equitable result, as where a defrauded party's inability to make restoration is due to the wrongful conduct of the fraudulent party. Jaeger, Williston on Contracts, § 1530, p. 648 (3rd ed. 1970).

■ The sequestration and sale of the cattle and equipment constituting the collateral for the loan transaction rendered it impossible for the Turners to make restitution with respect to the collateral in their hands at the time suit was filed. Keith Turner testified without contradiction that all funds which he had received in excess of the original purchase price of the cattle and equipment had been used by him to keep the cattle operation on a going basis and the only money he had left was a sum of nearly $500 which he testified he was holding in a checking account until the litigation was settled. He stated that this fund was available and that he would "turn it in" if that should be required.

Since there is no substantial dispute with respect to the funds and property available for restitution it becomes this court's duty to render a final judgment in the matter. Rule 434 Tex.R.Civ.P.

The judgment of the trial court is reversed and judgment is rendered that the plaintiff-appellee, Houston Agricultural Credit Corporation, take nothing against the defendants-appellants, Keith S. Turner and Verdell James Turner, independent executor of the estates of Floyd A. Turner and Gladys E. Turner, and that all documents reflecting the Turners' obligations with respect to the loan transaction, including the deed of trust executed by Floyd A. Turner and wife Gladys E. Turner dated August 13, 1975 to Ben Anthony, Trustee, for the use and benefit of Houston Agricultural Credit Corporation, filed of record under file mark No. E–513505 and film code No. 125–11–0354 of the Real Estate Records of Harris County, Texas, are hereby cancelled and set aside; provided further that this judgment is conditioned upon the payment by the said appellants defendants into the registry of the District Court the sum of $500.00 within ten days from the date hereof for the use and benefit of the said Houston Agricultural Corporation; otherwise, and in the event such payment is not made in the amount and within the time herein specified, the trial court's judgment will be affirmed.

PEDEN and WARREN, JJ., also sitting.